The opinion of the Court was delivered by
Wakdlaw, A. J.
As this case.is presented it involves not counsel fees, nor fees under the District Court Acts, (13 Stat. 29, § 46; 389, § 15,) but only the taxed costs of attorneys under previous Acts. An Act of 1839, (11 Stat. 8, 12,) amended in 1840, (11 Stat. 100, 148,) regulated the *236 fees of clerks, sheriffs, and some other officers, bat the fees of attorneys have remained as they were fixed by the Act of 1827, (6 Stat. 332,) and that Act must be construed in pari mataría with the Act of 1791, (5 Stat. 152, 161; Sharlock vs. Oland, 1 Rich. 208,) especially with its fifth section, which requires officers to collect their own fees. Another Act of 1791, (7 Stat. 264, § 4,) authorized attorneys, clerks, and sheriffs to have their costs taxed when a suit has at any stage ceased or determined, and to issue execution for the same against the party from whom they are due. The decisions which have been made under these Acts, show that these taxable fees are not demandable when the services are rendered, but only when the case, to which they relate, has been in some way terminated; (Hyams vs. Boyce, 1 McMul. 95;) that execution may be issued by the officers or either of them, against the party who is liable to pay after the termination of a case before regular entry of judgment by either party, Corrie vs. Jacobs, (Harp. 325;) Corrie vs. Fells, (3 McC. 26,) but in the ordinary case of judgment entered by the plaintiff against the defendant, although the judgment is the termination of the case, Buckle vs. Carter, (6 Rich. 111,) if thereupon execution against the defendant for the benefit of the officers as well as of the plaintiff is issued, as is usual, the plaintiff, even where the defendant’s insolvency has been ascertained, is liable, not to execution, but only to action on his contract for the services rendered to him; and that from the termination of a case the statute of limitations if not arrested by judgment or other means, runs in favor of the party who by such termination became instantly liable to pay the taxable costs. But as the liability of the plaintiff who has entered judgment, and issues execution against the defendant, has been treated as only secondary, that is as a liability to be enforced if the defendant should not pay, the question is now presented concerning the statute *237 of limitations, pleaded by the plaintiff in such a case where he is sued by an officer. If the plaintiff does not use diligence in collecting from the defendant, or otherwise the officers become satisfied that the remedy against the defendant would be unavailing, nothing prohibits them from presenting their demand to the plaintiff’ and upon his failure to pay, suing him. So that where the plaintiff has obtained judgment and has not for four years thereafter sued out execution, the recourse by the officers to him would be barred, revivable by the express promise which would be contained in his subsequent collection from the defendant. But where the plaintiff sues out execution against the defendant, he thereby makes a continuous acknowledgment of his willingness to pay the taxed costs, if the defendant should not; and without gross negligence this acknowledgment will not be determined until the return of nulla bona or non est inventus on the execution against the defendant.
In the case before us, laying aside the question of payment, which has been satisfactorily decided by the Circuit Judge, we find that in the case of Ward vs. S. K. Williams, (which the Judge confounded with another case of Ward vs. A. B. Williams, whence arose some mistake in the report,) the n. e. i. on ca. sa. against the defendant was returned April 5th, 1858; that in the case of Ward vs. W. A. China, nulla bona was returned May 8th, 1858, and that the costs of China vs. Ward, were acknowledged by the written agreement of Ward and China, April, 3d, 1858. So that we may now say the question is, whether the statute of limitations having commenced to run April 3d, 1858, had barred this suit, when it was commenced March 1st, 1867 ; and that is resolved into the question whether the suspension of the statute of limitations, contained in the fifth section of the Stay Law of 21st December, 1861, (13 Stat. 19,) ceased when the Court of Errors in May, 1866, declared the Stay Law unconstitutional in reference to past *238 Contracts, (State vs. Carew, 14 Rich. 498,) or continued until the expiration of tbe time within which by the Act of 1865, (13 Stat. 44,) it was limited. The Act of 1865, the last of the annual continuances of the Act of 1861, continues it “in force until the adjournment of the next regular session of tbe General Assembly,” and that adjournment took place December 21st, 1866. The suspensions which were enacted, if the enactments were valid, lasted just five years.
In the case of Administrators of Simkins vs. Buzzard, (ante p. 158,) decided in the Court of Errors, December, 1867, the question concerning the time when the suspension of the statute of limitations ceased was hinted at, but that case did not require its decision. The case actually decided only that the section of the Act commonly called the Stay Law, which related to the statute of limitations, was effective as to all contracts, whether past or future, notwithstanding that some other parts of the Act were, in reference to past contracts, unconstitutional. The language of Judge Dawkins, pronouncing the opinion of the Court and speaking of the statute of limitations and of the power' of the Legislature over it as an incident of the remedy, is this: “In fact its extension” [or suspension, practically the same] “ gives additional vitality to the contract and furnishes no ground of complaint to debtor or creditor; the debtor, if he wishes to pay can do so, and if the creditor desires to sue, there is nothing in its extension to prevent him.” Again, “there is (in the Act) no distinction made as to the time when the causes of action arose, and they (the Legislature) unquestionably meaDt and intended to embrace all money demands. If not intended to apply to causes of action then existing, the fifth section was unnecessary, and we cannot suppose the 1 egislature would be guilty of the folly of passing an Act suspending the operation of the statute of limitations, if intended to apply only to causes arising *239 thereafter, wben the Act itself was limited in its duration to one year.” The decision of the Court of Errors declared the law; — did not make it; that which it held to be unconstitutional was unconstitutional before, and there would be just as much propriety in saying that, in reference to past contracts, the statute of limitations was never suspended at all by the Act of 1861, as in saying that it was suspended, but the suspension was terminated by a decision of the Court. “ During the period in which this Act is of force,” the phrase used in the fifth section of the Act of 1861, is equivalent to during the period prescribed for the operation of the Act; but in the strongest sense which can be given to the words of J orce, the Act was of force during the period for which by sucession of re-enactments it was continued, not only as to future contracts, (Barry vs. Iseman, 14 Rich. 129,) but as to a special remedy against an absconding debtor and as to some other matters mentioned therein. We, therefore, hold that the statute of limitations was suspended until the end of the regular session of 1866, December 21st, 1866.
It follows that neither of the items for which the plaintiffs have a decree was barred. The motion is dismissed.
DuNKiN, 0. J., and Lstglis, A. J., concurred.

Motion dismissed.